No. 9791.

MANATEE COUNTY STATE BANK *v.* BRUEN-FISHER FRUIT CO.

Decided June 6, 1921. Rehearing denied November 7, 1921.

Action in damages. Judgment for plaintiff.

*Reversed.*

1. BILLS AND NOTES—*Drafts—Ownership.* Where one deposits a draft unconditionally with a bank, receives credit therefor and checks out the amount in the regular course of business, the bank be-

comes the owner of the fund which is not subject to attachment in a suit against the depositor.

*Error to the District Court of the City and County of Denver, Hon. C. J. Morley, Judge.*

Messrs. HUGHES & DORSEY, Mr. W. M. BOND, for plaintiff in error.

Mr. ARCHIBALD A. LEE, for defendant in error.

*Department One.*

MR. JUSTICE TELLER delivered the opinion of the court.

THE defendant in error purchased of one McRee, of Florida, a carload of oranges upon the guarantee by the Capitol Hill State Bank that a draft, drawn by McRee on said Fruit Company in payment of the oranges, would be paid. The draft was drawn, and deposited in the Manatee State Bank, and by it forwarded to Denver, where it was accepted by the fruit company and paid. Immediately following said payment the proceeds of the draft were attached, as belonging to McRee, in a suit brought against him by the fruit company upon the claim that the fruit, on arrival, was in bad condition, because of which the fruit company had suffered damages. No appearance was made on behalf of McRee, and judgment by default was entered against him. Prior to such judgment, the Manatee County State Bank, by leave of court, intervened in the action, claiming to be the owner of the funds seized under the writ of attachment. On trial to a jury the plaintiff had judgment, and the intervener brings the case here on error.

It appears that the court erred in not granting a motion by plaintiff in error for a directed verdict. The only evidence in the case is by deposition. McRee testified to the selling of the oranges and the drawing of the draft; that he took the draft with the bill of lading attached to Mr. Lamb, the vice president of the intervener bank, and that he deposited it in the bank, and received credit on his pass book for the same; that the credit for the amount of the

draft was unconditional, and subject to the immediate check of the witness. He further testified that he paid out the money in question the same day that it was credited him, and that the draft had not been charged against him, nor had the bank made any demands upon him in respect to it. Accompanying his deposition was his pass book showing a deposit on the date of the draft. Lamb, vice president, testified that he was the manager of the bank and that, on November 14, 1918, he took a deposit from McRee, which was a sight draft on the fruit company for $1314, the amount of the draft in question, with a bill of lading for one car of fruit and a guarantee from the Capitol Hill State Bank attached; that the draft was immediately sent to the Capital Hill State Bank, with instructions to collect and remit the proceeds. The credit for the amount of the draft was placed to the account of McRee on his pass book, and an unconditional entry of credit made on McRee's account; that the records of the draft so credited were withdrawn immediately by McRee; that such action was anticipated by the bank when it gave the credit; that the bank had refused the purchase of an earlier draft because the guaranty from the bank was conditional. Upon cross-examination the witness testified that he purchased the draft for the bank; that the bank made no arrangement with McRee for its protection in the event of the nonpayment of the draft, but took it on the faith of the guaranty of the Denver bank. The testimony of one Howz, cashier of the intervener bank, fully corroborated the testimony of Lamb.

The only question before the court was whether the draft was purchased or taken for collection. The undisputed testimony upon that point is that the bank purchased the draft. It is contended that, inasmuch as Lamb and Howz were officers of the bank, their testimony, although undisputed, cannot be taken as true and determinative of the issue. McRee's testimony, however, is direct and positive that the transaction was a purchase. As drawer of the draft, his liability upon it ceased when the draft was paid,

and his testimony therefore is that of a disinterested party. It must be held that this case is governed by the recently determined case of *Union National Bank of Fostoria v. The Maines-Hough Motor Co.,* 70 Colo. 132, 197 Pac. 753, decided at this term.   In that case, as in this, the evidence showed a purchase and we held that the money in the bank where the draft was paid was not liable to garnishment by a creditor of the drawer.   The claim of the intervener to the money having been supported by competent testimony, and there being no evidence to the contrary, the motion for a directed verdict in favor of the intervener should have been sustained.

The judgment is accordingly reversed, and the cause remanded with instructions to the trial court to enter judgment for the intervener.

MR. JUSTICE BAILEY, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE ALLEN concur.