L. A. ANDREW, State Superintendent of Banking, Appellee, v.
DARROW TRUST & SAVINGS BANK, Appellee; CITIZENS
NATIONAL BANK OF CHARLES CITY, Appellant.

**TRUSTS:  Enforcement—Conversion by Officer of Bank—Effect.** The
1  act of an officer of a bank in fraudulently converting *to his own use*
a promissory note which had been sent to the bank for collection
by the bank furnishes no basis for decreeing to the owner of the
note an equitable preference in payment out of the assets of the
insolvent bank.

**TRUSTS:  Enforcement—Presumption of Preservation—Right to Rebut.**
2  The presumption that a cash trust fund was preserved in the trus-
tee's cash balance may be rebutted by the receiver of the insolvent
trustee.

**BANKS AND BANKING:  Collections—Conversion by Officer—Effect.**
3  The fraudulent conversion by an officer of a bank of a promissory
note which had been sent to the bank for collection by the bank
renders the bank liable for the conversion, and the owner of the
note must be given the status of a general creditor of the bank.

**Headnote 1:** 7 C. J. p. 751. **Headnote 2:** 39 Cyc. p. 540. **Headnote
3:** 7 C. J. p. 610.

*Appeal from Chickasaw District Court.*—H. E. TAYLOR, Judge.

JANUARY 10, 1928.

Claim for a preference in the funds in the hands of the re-
ceiver of an insolvent bank. The trial court denied any relief to
the claimant, and the latter appeals.—*Modified and affirmed.*

*M. F. Condon* and *William H. Salisbury*, for appellant.

*John Fletcher*, Attorney-general, and *Geiser & Donohue*, for
plaintiff, appellee.

FAVILLE, J.—On December 25, 1924, the appellant purchased
of the Darrow Trust & Savings Bank of New Hampton a note of
$1,900, made by one Klatt and wife.  On March 3, 1925, the
claimant sent said note to said Darrow Trust &
Savings Bank, the letter of advice stating that
said note was sent "for collection and returns."
On April 25, 1925, the president of the Darrow

Trust & Savings Bank wrote claimant that the maker of said note was arranging for a loan, and asked to be permitted to carry the note for a little while. It appears, however, that, on March 4, 1925, Klatt renewed the note by the giving of a new one. The old note, which had been sent to the Darrow Trust & Savings Bank by claimant for collection, was stamped "paid," and surrendered to the maker at that time. It appears that the new note was made payable to the Darrow Trust & Savings Bank. This note was not entered in the bills receivable account of the bank. The transaction was carried on by A. J. Kolthoff, the president of the Darrow Trust & Savings Bank, but no entries appear to have been made in any of the books of the bank in regard to the transaction. There is no positive evidence in the record of what was done with the new note. It may fairly be inferred from the record that it was transferred to one Williams. There is no proof that it ever became an asset of the Darrow Trust & Savings Bank. It was not entered on the discount register of the bank, and was not held by it. The claimant did not authorize any such renewal, and did not know that any such renewal note was in existence until after the Darrow bank closed.

On July 20, 1925, the claimant wrote the Darrow bank, demanding that it return the Klatt note "by first mail." Instead of so doing, on July 21, 1925, A. J. Kolthoff, president of the Darrow bank, sent claimant a check for $1,986.55, drawn on the Darrow bank. The check was signed "A. J. Kolthoff, Special Account." The check was received by the claimant on July 22, 1925, and promptly presented for payment, but the Darrow bank was closed on July 22d, and the check was not paid. On the day the bank closed, the "A. J. Kolthoff, Special Account," carried a credit of $2,437.25. The Darrow bank was placed in the hands of a receiver, and appellant filed a claim for the amount of said check, and sought to have a preference established therefor. The trial court denied the claimant the rights of either a depositor or a general creditor.

I. When appellant sent the note which it held to the Darrow bank for collection and return, it established at once the relation of principal and agent between it and said bank. *Page County v. Rose*, 130 Iowa 296; *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608; *Leach v. Battle Creek Sav. Bank*, 202 Iowa 875. The Darrow bank has never accounted to the appellant for

said note, and is liable, in conversion at least, for the value of said note, which is presumed to be the amount due thereon. The important question in this case is whether or not the appellant is entitled to have a preference established in its behalf in the funds or assets of the bank that came into the hands of the receiver.

It is a general rule, recognized by many pronouncements of this court, that a creditor who asks that his claim be given a preference has the burden of showing that his property or the proceeds thereof have come into the hands of the receiver as an increase of the assets of the bank. *Jones v. Chesebrough*, 105 Iowa 303; *Bradley v. Chesebrough*, 111 Iowa 126; *First State Bank v. Oelke*, 149 Iowa 662. This right to a preference may be established by positive proof or by proper presumptions of law. There is no positive evidence in the record that the bank ever received anything in the way of proceeds from the appellant's note. There is some evidence tending to show that the renewal note was executed on a form in which the Darrow bank was the payee, but there is no direct evidence whatever that the bank, as such, ever received said note or any of the proceeds of said note. The evidence shows that the said renewal note did not become a part of the bills receivable of said Darrow bank. It fairly appears from the evidence that the president, Kolthoff, secured the renewal of the note by the maker, Klatt, the next day after the note was received by the Darrow bank from the appellant, and there is evidence indicating that Kolthoff sold and disposed of this note to one Williams. If it was so sold by Kolthoff, there is no showing that the proceeds of the note passed into the hands of the bank. The account in the bank designated as "A. J. Kolthoff, Special Account," does not show any item traceable to the proceeds of appellant's note or the renewal thereof. The cashier testified:

"No note of that amount has come into the bank during the month of March, nor any other month during the year 1925. Charles Williams showed me a note, soon after the bank closed, of $1,900, signed by A. C. Klatt, and indorsed by his mother, I believe. * * * I do not know what was done with the proceeds of the note, whether put in cash in the bank or put in the bank in any other form. I wouldn't know whether it might have been carried as a part of the assets of the bank and not ap-

pear on the books of the bank. The renewal was never entered on the books of the bank. Collections do not appear on the books of the bank. I am unable to say whether this might or might not have become a part of the assets of the bank in one form or another.''

In this state of the record, appellant's case does not rest on positive evidence. It must rest, if at all, on the presumptions that are to be indulged from such a fact situation as we have outlined. The appellant sent its note to the Darrow bank for collection and return. By so doing, it created the relation of principal and agent, and when it demanded a return of its note, the agent failed and neglected to return the note. As before stated, the bank must be held liable at this point for conversion of the appellant's property. We may properly indulge the presumption at this point that the bank received the proceeds of the appellant's property in some form or other. The burden would rest upon the receiver to overcome this presumption. This we think the receiver successfully did. We have heretofore set out sufficient of the record to show that Kolthoff personally, and not the bank, received the proceeds of appellant's property. Kolthoff obtained the renewal from the maker. Kolthoff falsified to the appellant about the maker's procuring a loan. When finally confronted with a demand for the return of the note, Kolthoff sent his personal check therefor. The bank is liable in conversion for the value of appellant's property, but a preference in trust funds in the bank cannot be established by proof of the conversion of appellant's property by an officer of the bank, when it appears that the receiver did not receive the funds in any manner, and the officer acted fraudulently and for his own purposes in misappropriating the funds. As bearing on the rule, see *Stilson v. First State Bank*, 152 Iowa 724; *In re Insolvency of Farmers & Merch. Sav. Bank*, 202 Iowa 859; *Leach v. Sanborn State Bank*, 203 Iowa 401; *Leach v. Iowa State Bank*, 202 Iowa 887.

Even if we indulge in the presumption that the bank received the proceeds of the appellant's property at or about the time it was forwarded by the appellant to the Darrow bank, such a presumption is not conclusive, and may be rebutted by the receiver by proof that the fund had been dissipated, and that no part of it in any form ever came into his hands. *Hanson v.*

2. TRUSTS: enforcement: presumption of preservation: right to rebut.

*Roush,* 139 Iowa 58; *Cable v. Iowa State Sav. Bank,* 197 Iowa 393; *City of New Hampton v. Leach,* 201 Iowa 316. The record abundantly establishes that, if the proceeds of the note were ever received by the bank, they were wholly dissipated before the appointment of the receiver. See *Andrew v. Darrow Tr. & Sav. Bank,* 204 Iowa 870. We may appropriately paraphrase what we said in *First State Bank v. Oelke,* supra. It would be the rankest fiction, in this case, to say that the appellant has proven by any evidence that the proceeds of its note ever reached the hands of the receiver as an increase of the assets of the Darrow bank. No one can read the record without becoming thoroughly satisfied that the proceeds of appellant's note were appropriated by the president, Kolthoff, to his own personal use and benefit. In said case we said:

"It is the settled rule of our cases that a preference will not be allowed unless it be found that the fund has increased the present assets of the bank and that it may be taken therefrom without impairment of the rights of creditors."

In the instant case, the record fails to establish a right on the part of the appellant to be allowed a preference for the amount of its claim against the funds in the hands of the receiver. Appellant is, however, entitled to have its claim established as that of a general creditor of said bank. The court erred in denying such relief to the appellant. The decree of the trial court will be modified, and the appellant's claim will be established as that of a general creditor of said bank. Otherwise, the decree will be affirmed. The costs in this case will be taxed two thirds to the appellant and one third to the appellee.—*Modified and affirmed.*

3. BANKS AND BANKING: collections: conversion by officer: effect.

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.