SAVINGS BANK v. NATIONAL BANK.

(*Nashville.* March 8, 1897.)

1. BANKS AND BANKING. *Usages as to making collections.*

One who chooses a bank as a collecting agent, impliedly agrees that the agency may be performed in accordance with such reasonable methods prevailing at the place of collection as have ripened into usage not in conflict with the general law, although he has no knowledge of its existence. (*Post, pp. 340, 341.*)

Cases cited and approved: Sahlien v. Bank, 90 Tenn., 221; Howard v. Walker, 92 Tenn., 452.

Cited and distinguished: Walker v. Walker, 5 Heis., 425.

2. SAME. *Same.*

A custom of a bank receiving a draft for collection, to accept in payment a check by the acceptor on another bank, and present such check to the latter bank for payment at eleven o'clock in the forenoon of the following business day, and leave it with such bank a reasonable time for examination, is lawful and proper. (*Post, pp. 338–340.*)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. THOS. H. MALONE, Ch.

STEGER, WASHINGTON & JACKSON for Savings Bank.

CHAMPION, HEAD & BROWN for National Bank.

BEARD, J. This cause was tried upon a state-

14 P—22

ment of agreed facts. Those essential to its present determination are as follows, to wit:

The complainant and defendant were corporations engaged in general banking operations—the one in Birmingham, Alabama, and the other in Nashville, in this State. They were, at the time of the transaction out of which this controversy arose, and had been for a considerable period antecedent, engaged in mutual correspondence, as the exigencies of their business required or suggested. In the course of this correspondence the complainant bank, as owner and holder, forwarded to the defendant bank for collection a note for $940, drawn by Loventhal & Sons to the order of and indorsed by J. C. Marks & Co., and also a draft for $1,352, drawn by J. C. Marks & Co., and accepted by Sulzbacker Bros., both due and payable on Saturday, June 20, 1891. At 2 P.M. on the day of its maturity, the maker of the note and the acceptor of the draft tendered in payment thereof, to the teller of the Commercial National Bank, their checks for the respective amounts due thereon, drawn on and properly certified by the Nashville Savings Bank (a banking corporation of good standing in Nashville), and these checks were accepted by this officer of the defendant, and the note and draft, after being stamped "paid," were delivered into the hands of the parties respectively entitled to them. This was done in accordance with a well-established usage or custom of the various banks of Nashville. The checks thus received

were carried over to Monday, June 22, on which day, at the hour of 11 A.M., they were presented to the Nashville Savings Bank for payment, this being the day and the hour, according to the custom and usage of the banks of Nashville, for their presentment. These checks were left with the Nashville Savings Bank for examination, according to another custom or usage of these banks, and, at 2 P.M. of June 22, they were returned unpaid to the defendant bank. At that hour the Nashville Savings Bank closed its doors, and the Commercial National Bank at once caused the checks to be presented and protested for nonpayment. It is agreed that the Jefferson County Savings Bank had no knowledge of any of these local customs or usages of the banks of Nashville, and was ignorant of the methods pursued by the defendant bank in regard to this paper, until informed thereof by subsequent correspondence. Efforts made to collect the amount of these checks out of the drawers having proved abortive, the result is that the draft and note have been wholly lost to their owner.

The bill in this cause seeks a decree against the Commercial National Bank covering this loss, upon the ground that it had no right, in the absence of express authority, to receive in payment of this paper anything but money, and that it cannot excuse itself from liability for doing otherwise by setting up a local custom or usage of which the complainant was wholly ignorant. The Court of Chancery Appeals

held to this view, and accordingly entered a decree in favor of complainant for the full amount of the note and draft, with interest added.

In this decree there was error. The rule which that Court invokes as decisive of this case—that is, that an agent, in the absence of express authority, cannot accept anything in discharge of the principal's debt except money—is well settled, and has been frequently announced in such cases as *Walker* v. *Walker*, 5 Heis., 425, but it does not control a case like the present. A principal who selects a bank as his collecting agent, thus availing himself of the facilities which it holds out, in the absence of special directions, is bound by any reasonable usage prevailing and established among the banks at the place where the collection is made, without regard to his knowledge or want of knowledge of its existence. *Sahlien* v. *Bank*, 90 Tenn., 221; *Howard* v. *Walker*, 92 Tenn., 452. This rule regulating the relation of collecting banks to parties who take advantage of the means which they offer in this respect, is founded on sound reason. Every business man knows that in the constantly increasing volume and variety of banking transactions, the larger number of which are settled or disposed of by a simple exchange of credits, methods have been adopted by bankers to economize labor, reduce risks, and simplify dealings with one another, and with their customers. Some of these methods are of a general character, while others are dictated by

Savings Bank *v.* National Bank.

local convenience or necessity. That these methods so prevail, is a fact of such public notoriety that no business can well affect to be ignorant, and least of all a banking institution. It is in view of this we have held that in choosing a bank as a collecting agent the principal impliedly agrees that the agency may be performed in accordance with such reasonable methods as, sanctioned by experience, have ripened into usage, when such usage is not in contravention of a general law, and in this holding we are well supported by authority, as will be seen by reference to the cases already cited. The usages which were observed in the unsuccessful effort to collect the paper in controversy, and which are shown to have been established among the banks of Nashville, we find were reasonable and proper. It follows that the complainant was conclusively effected by them, although actually ignorant of their existence.

The decree of the Court of Chancery Appeals is reversed and the bill is dismissed.