(No. 5104. May 18, 1929.)

ADAMS COUNTY, IDAHO, a Municipal Corporation, Respondent, v. MEADOWS VALLEY BANK, a Corporation, Appellant.

[277 Pac. 575.]

Rice & Bicknell, Oppenheim & Lampert and S. Ben Dunlap, for Appellant.

George Donart and Carl H. Swanstrom, for Respondent.

BAKER, District Judge.—On January 8, 1926, the tax collector of the plaintiff delivered at his office to the cashier of the defendant bank, which was then a public depository, certain checks, totaling the sum of $1,392.64, drawn against sufficient accounts by depositors in the First Bank of Council. A deposit slip containing the statement that "checks and drafts credited subject to payment" was prepared in the office of the tax collector and duplicate was retained by him. On the following day the deposit was entered on the books of the bank and the account of the tax collector was credited with the amount thereof. The checks were forwarded by the defendant to its correspondent in Portland, Oregon, by the latter to the Salt Lake City branch of the Federal Reserve Bank of San Francisco and by that bank to the drawee and were by it marked paid, charged to the accounts of the makers and subsequently delivered to them. The Council bank (drawee) then issued its draft on a Portland bank for the total of the items, and forwarded the same to the Salt Lake City branch of the Federal Reserve Bank of San Francisco. Due to the failure of the Council bank the draft was not paid and the credits extended by the various banks were reversed and the account of the tax collector was eventually charged with the amount of the checks which were not, however, returned to him. It does not appear whether the condition of the Bank of Council was such as to permit payment of the checks in cash.

The plaintiff alleged the deposit and the refusal of the bank to pay on demand. The fact that the checks were paid by draft was not alleged in the complaint.

The defendant bank affirmatively pleaded: "That at all times in said complaint and herein mentioned it was, and now is, the general, universal and accepted custom and practice of all banks and bankers in the state of Idaho to issue and accept, in settlement of collection items forwarded to or received by them from banks of other cities and towns, drafts upon correspondent banks. and in case of non-payment of such drafts to charge back the amount of the items to the bank from whom received; that the plaintiff and its agent, in forwarding the checks referred to in the complaint filed in this action for collection did so with the full knowledge and notice of the existence of such custom and practice."

During the trial evidence was offered and received over the objection of a general custom among banks in Idaho to accept exchange in adjustment of accounts between banks and the payment of items presented by one against another and that it was the bank's custom to reverse a credit given to a depositor on items which had not been paid in cash to the bank of initial deposit by reason of dishonor of such exchange. Application to amend its answer by more specifically alleging the latter custom was denied by the court. From judgment entered in favor of the plaintiff for the full amount claimed upon a verdict returned by direction of the court the defendant has appealed.

Respondent's cause of action, as disclosed by its complaint, was simply one to recover a deposit wrongfully withheld. It did not seek to recover damages sustained by it by reason of any negligent act on the part of the appellant or its correspondent bank. The trial, however, proceeded as though the action were one to recover damages sustained by respondent through the act of the correspondent bank in delivering solvent checks and accepting a worthless draft in payment. Respondent did not assert that appellant was negligent in any other respect. It was not alleged in the complaint or contended in the trial court or argued here

that the circumstances disclosed were sufficient to impose upon the appellant the duty of more promptly making presentation of the checks or make it an act of negligence for the bank to employ such a circuitous route for presentation.

A directed verdict is proper only when there is no question of fact to be submitted to the jury. The judgment entered on such verdict cannot be sustained if there is any evidence in the whole case supporting a defense or any evidence, material to a defense, which if found to be true would support a verdict for the defendant. (*McCornick & Co., Bankers, v. Tolmie Bros.*, 42 Ida. 1, 243 Pac. 355.)

Generally the maker of a check drawn against a sufficient account undertakes that the check will be paid in cash on presentation. The depositor and the holder of the check alike have the right to insist that payment be made, not in exchange, but in money. The maker of the check has the right to assume that the holder will exact payment in cash and will accept nothing in lieu thereof. The holder of the check has the right to assume that his indorsee or his agent will accept no substitute for cash. When anything other than money is accepted by or for the holder of a check in payment of it, the maker is released from liability both on the check and the indebtedness. (Note, 52 A. L. R. 994; *Federal Reserve Bank v. Malloy*, 264 U. S. 160, 31 A. L. R. 1261, 44 Sup. Ct. 296, 68 L. ed. 617; *First Nat. Bank v. First Utah Nat. Bank*, 15 Fed. (2d) 913; *Cleve v. Craven Chemical Co.*, 18 Fed. (2d) 711, 52 A. L. R. 980; *Berg v. Federal Reserve Bank*, 55 N. D. 406, 52 A. L. R. 988, 213 N. W. 965.) In the absence of contract, custom or statute, nothing but payment in money will relieve a collecting bank from the duty it owes to the holder of a check for whom it acts as agent or from the duty it owes to its indorser. (1 Morse on Banks & Banking, 6th ed., p. 595; *Peterson v. First State Bank*, 79 Colo. 494, 246 Pac. 784; *First Nat. Bank v. Commercial Bank & Trust Co.*, 137 Wash. 335, 242 Pac. 356; *City of Douglas v. First Nat. Bank*, 29 Ariz. 89, 239 Pac. 785; *Chicago, M. & St. P. Ry. Co. v. Federal*

*Reserve Bank* (Utah), 260 Pac. 262; *Luckehe v. First Nat. Bank,* 193 Cal. 184, 223 Pac. 547.) If the presenting bank accepts anything other than cash in payment ' of a check its liability is as definitely fixed as though it had received cash. (*Jensen v. Laurel Meat Co.,* 71 Mont. 582, 230 Pac. 1081; *Federal Reserve Bank v. Malloy, supra; First Nat. Bank v. Commercial Bank & Trust Co., supra; Luckehe v. First Nat. Bank, supra; First Nat. Bank v. First Utah Nat. Bank, supra; Virtue v. Danbury State Bank,* 205· Iowa, 392, 218 N. W. 58.)

The result of the facts recited is that the makers of the checks have been released from liability and a worthless draft has been substituted to the prejudice of the respondent. If appellant is answerable for the act of the Federal Reserve Bank in accepting the draft in payment of the checks, and if neither statute, contract nor custom intervenes, the judgment entered on the directed verdict was in all respects proper.

■ Appellant contends that the rights of the parties to this suit are as though the checks had been expressly deposited for collection only; that the deposit amounted to one for that purpose and that its liability is to be tested by the rules governing the actions of banks in handling collection paper. Respondent, on the other hand, contends that by the unrestricted indorsement of the checks and the extension of credit therefor to the depositor on the books of the bank against which the depositor had the right to draw, the appellant became the owner of the checks; that the parties bear toward each other the relation of indorser and indorsee of negotiable paper and that their rights are to be determined by the law relating to that subject. The general rule appears to be as contended for by respondent. (7 C. J. 635; 1 Morse on Banks & Banking, 6th ed., 1221 et seq.; 4 Cal. Jur. 194; *First Nat. Bank v. First Utah Nat. Bank, supra; Plumas County Bank v. Bank of Rideout,* 165 Cal. 126, 131 Pac. 360, 47 L. R. A., N. S., 552, and note; *City of Douglas v. Federal Reserve Bank,* 271 U. S. 489, 46 Sup. Ct.· 554, 70 L. ed. 1051; *Bryant v. Williams,* 16 Fed. (2d) 159;

*Tropena v. Keokuk Nat. Bank,* 203 Iowa, 701, 213 N. W. 398; *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 37 A. L. R. 611, 218 Pac. 232; *Vickers v. Machinery Warehouse & Sales Co.,* 111 Wash. 576, 191 Pac. 869; *Security Bank v. Northwestern Fuel Co.,* 58 Minn. 141, 59 N. W. 987; *Henefin v. Live Stock Nat. Bank,* 116 Neb. 331, 217 N. W. 91.)

It would not, however, appear necessary to decide the particular question in this case. The rights of the parties are in this case the same whether the appellant held the checks for collection or whether it owned them as an indorsee. In either case the right to charge the account of the depositor with uncollectible items previously credited to his account exists, and in either case such right may be lost. Where paper is deposited for collection no liability exists on the part of the collecting bank under the contract until such paper has in fact been collected. The bank of initial deposit may by negligence either of itself or of another for which it is answerable become liable for loss sustained. When paper is deposited in a bank under such conditions as to make the bank the owner of such paper the right exists on the part of the bank to charge back to the account of the depositor items found to be uncollectible. The credit is considered conditional only and the right to charge back has been generally, if not universally, recognized wherever it has been asserted. (1 Morse on Banks & Banking, 6th ed., 1228; 7 C. J. 604; *Plumas County Bank v. Bank of Rideout, supra; Raynor v. Scandinavian-American Bank,* 122 Wash. 150, 25 A. L. R. 716, 210 Pac. 499; *Washington Shoe Mfg. Co. v. Duke, supra; Burton v. United States,* 196 U. S. 283, 25 Sup. Ct. 243, 49 L. ed. 482; *Noble v. Doughten,* 72 Kan. 336, 83 Pac. 1048, 3 L. R. A., N. S., 1167; *City of Douglas v. Federal Reserve Bank, supra; Fayetteville First Nat. Bank v. McMillan Bros.,* 15 Ga. App. 319, 83 S. E. 149; *Mudd v. Farmers' etc. Bank,* 175 Mo. App. 398, 162 S. W. 314.) Whether this right is founded on the custom of banks or is an implied condition imposed at the time the deposit is made, or is a rescission by the bank of

credit previously extended or is the summary exercise by the bank of its right to recover from its indorser is now immaterial. In this case the right to charge back uncollectible items was preserved by the terms of the deposit slip. (*City of Douglas v. Federal Reserve Bank, supra; First Nat. Bank v. Federal Reserve Bank,* 300 Fed. 573.)

If the appellant is answerable to the respondent for the act of the Federal Reserve Bank in accepting the draft, it cannot charge the amount thereof to the account of the tax collector without regard to the character of the relation created by the original transaction between the appellant and the tax collector. If the checks were deposited for collection only, cash was not received solely because the collecting bank elected to accept draft in payment of collectible items; if appellant became the owner of the checks as an indorsee, the tax collector's liability was that of indorser and the discharge of the parties primarily liable released him.

There would at this time appear to be no room to doubt the existence of the rule that custom of trade or business enters into and becomes a part of every business transaction. The parties are presumed to have dealt with each other with the customs pertaining to that particular character of business in mind and with the intention that their respective rights and liabilities be controlled by such customs. (*Chicago, M. & St. P. Ry. Co. v. Federal Reserve Bank, supra; Luckehe v. First Nat. Bank, supra; Federal Reserve Bank v. Malloy, supra; Hilsinger v. Trickett,* 86 Ohio St. 286, Ann. Cas. 1913D, 421, 99 N. E. 305; *Spokane Valley State Bank v. Lutes,* 133 Wash. 66, 233 Pac. 308; *First Nat. Bank v. Commercial Bank & Trust Co., supra.*)

As to banking transactions, the rule is stated in 1 Morse on Banks & Banking, 6th ed., 559 and 561, in these words:

"The understanding, which is assumed to be mutual and to enter into the contract of the parties is that the bank shall perform the various acts which are embraced in the business of collection in every respect according to the method which it is wont to pursue, in accordance with the

local laws, rules and regulations. Evidence of the habitual course of dealing, provided it be not incurably illegal, is admissible, not as amounting to rules of judicial decision, but as evidence of the contract. The assent of all concerned to the pursuance of this course of dealing, and their waiver of any strictly legal claims which they might have in contravention or variation thereof, becomes then an implication of law.

"The fact that one deals with the bank without taking the trouble to inquire as to its system will raise the implication that he already knows and is satisfied with that system. It is clear that, if a person hands over a note to a bank for collection without any species of remarks as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course and to retain him till the whole story has been expounded to him, when his conduct unmistakably shows that either he already knows it or else he does not desire to know it. Either he knows and approves it or he voluntarily trusts to the wisdom of the bank, and at his own deliberately assumed risk of its sufficiency. In such a case the bank not only has a right to assume, but it is even positively bound to assume that his desire is that the ordinary and established usage be pursued."

Statements to the same effect are found in 7 C. J. 612; 4 Cal. Jur. 263; *Luckehe v. First Nat. Bank, supra; Chicago M. & St. P. Ry. Co. v. Federal Reserve Bank, supra; Hilsinger v. Trickett, supra; Spokane Valley State Bank v. Lutes, supra; First Nat. Bank v. Commercial Bank & Trust Co., supra; Savings Bank v. Commercial Nat. Bank,* 98 Tenn. 337, 39 S. W. 338; *New York N. H. & H. Ry. Co. v. First Nat. Bank,* 105 Conn. 33, 134 Atl. 223; *First Nat. Bank of Memphis v. First Nat. Bank of Clarendon,* 6 Tex. Civ. App. 469, 134 S. W. 831.

There was proof of custom of banks in Idaho to accept exchange in payment of checks. Whether the evidence sufficiently established custom is not for us now to determine. There was evidence which if found to be true would have justified a verdict for the defendant and the

direct verdict was for that reason, if for no other, erroneous. There was an effort on the part of the appellant to show that the tax collector had actual knowledge of the existence of this custom but for some reason not made plain or appearing in the record the trial court rejected the evidence offered.

Respondent vigorously argues that the custom pleaded is not sufficient to permit proof of custom to charge to the account of the depositor the amount of checks not actually paid to the bank of initial deposit by reason of dishonor of draft accepted in payment. It is true the allegation is not as definite as could be desired and might be somewhat uncertain. In view, however, of the character of the action, the parties to it, their clear understanding of the facts and the issues, the thorough understanding by respondent of appellant's position and the apparent futility in this action of an affirmative defense that the bank of initial deposit had the right to charge the draft accepted in payment of the checks to the bank from which it was received (not a party to this suit), we think the allegation sufficient to permit proof of custom sought to be established and to refute any contention by respondent that the allegation of custom had misled it.

We attach no particular importance to the contention of respondent that the right to charge back did not exist because the tax collector was a public officer and authorized to make a general deposit only. The deposit was general and the bank had the right to reverse a credit extended if the items so credited were found to be uncollectible. We cannot adopt a rule which would make banks accepting checks from public officers the absolute purchasers of the checks without right of recoupment in case they prove to be uncollectible.

During recent years the courts have frequently been called upon to construe acts of the legislatures of the various states dealing with some phase of the question involved here. In most instances the acts expressly authorize the direct presentation of checks, sometimes attempt to expressly au-

thorize the payment of items by the issuance of exchange and with less uniformity of expression deal with the liability of the bank of initial deposit for the defaults of its correspondents. (*Stout Lumber Co. v. Hayes,* 25 Fed. (2d) 841; *Federal Reserve Bank v. Malloy, supra; Cleve v. Craven Chemical Co., supra; Jensen v. Laurel Meat Co., supra; Peterson v. First State Bank, supra; Berg v. Federal Reserve Bank, supra.*)

The sixteenth session of the legislature of this state passed an act (1921 Laws, p. 361) directly dealing with the question now under consideration. This act was re-enacted as sec. 93 of the Banking Act (1925 Sess. Laws, p. 231) and is as follows:

"Any bank . . . . receiving for collection or deposit, any check . . . . drawn upon any other bank located in another city or town . . . . may forward such instrument for collection directly to the bank on which it is drawn . . . . and such method of forwarding direct to the payer shall be deemed due diligence and the failure of such payer bank, because of insolvency or other default, to account for the proceeds thereof, shall not render the forwarding bank liable therefor, provided, however, such forwarding bank shall have used due diligence in other respects in connection with the collection of such instrument."

. If it were the intention of the legislature to do nothing but to authorize the direct presentation of checks, there was no occasion or necessity for the provision: "and the failure of such payer bank . . . . to account for the proceeds thereof, shall not render the forwarding bank liable." Without that provision the intention to permit direct presentation was apparent.

We conclude that while the statute does not continue the liability of the maker of a check until exchange issued in payment has cleared as does the North Carolina statute considered in *Cleve v. Craven Chemical Co., supra,* or authorize, either conditionally or absolutely, the payment of checks in anything but cash, the provision quoted, which is otherwise meaningless, exempts a collecting bank, either of

initial deposit or correspondent, if it be otherwise free from negligence, from liability to its depositor for loss sustained by him through the failure of a payer bank to account for the proceeds of a check by remittance in cash. The payer bank in this case did not account for the checks because of its insolvency and the case seems to clearly fall within the provisions of the statute. If the bank of initial deposit is to be responsible it must be negligent in some other respect.

The judgment is reversed with instructions to dismiss. Appellant will recover costs.

Budge, C. J., and Givens and Wm. E. Lee, JJ., concur.

Justice Varian did not participate in decision.

Petition for rehearing denied.